SCARBOROUGH et al. v. VICTORIA BANK & TRUST CO.

No. 12400.

Court of Civil Appeals of Texas. San Antonio.

July 16, 1952.

Rehearing Denied Sept. 3, 1952.

Jack U. Scarborough, Victoria, Fulbright, Crooker, Freeman & Bates, B. J. Bradshaw, and Russell Talbott, Houston, for appellants.

Stofer, Proctor, Houchins & Anderson, Houston, for appellee.

NORVELL, Justice.

This suit involves the priority of claims based upon respective assignments executed by a building contractor, E. E. Gillenwater. Appellants likewise assert claims based upon the theory of subrogation. The facts necessary to an understanding of this opinion are as follows:

On July 6, 1949, E. E. Gillenwater, as general contractor, and Claude K. McCan, as owner, entered into a written contract whereby Gillenwater agreed to construct a guest house on the property of McCan situated near McFadden in Victoria County, Texas, for a total contract price of $17,800. On or about October 25, 1949, Gillenwater completed the guest house to the satisfaction of McCan and his architect.

Prior to the completion of the house McCan paid to Gillenwater all of the contract price, except the sum of $5,459.65, which unpaid sum was tendered into court by McCan.

Some fourteen subcontractors who furnished labor or material or both to Gillenwater for use on the McCan job had not been paid at the time this suit was filed. The sum total of their valid claims amounted to $6,281.69.

None of the subcontractors above mentioned filed a written contract or an itemized account of his claim supported by affidavit, as is provided for by Article 5453, Vernon's Ann.Civ.Stats.

On July 6, 1949, Gillenwater, as principal, and Fidelity & Deposit Company of Maryland, as surety, executed and delivered to McCan, as obligee, a written bond securing the performance of the construction contract.

On July 2, 1949, Gillenwater executed and delivered to the above surety an application for the bond, in which Gillenwater agreed to indemnify the surety against any loss upon such bond. The application contained an assignment of all sums to become due from McCan which was to become effective if Gillenwater failed to discharge all bills for labor or materials. No notice of such assignment was filed for record with the County Clerk as is provided for by Art. 260-1, Vernon's Ann.Civ.Stats.

On July 6, 1949, Mrs. Minnie S. Welder executed and delivered to the above mentioned surety a written agreement whereby she agreed to indemnify such surety against all liability it might sustain by reason of having executed the above performance bond. Mrs. Welder is now dead and Jack U. Scarborough is independent executor of her estate and is a party to this suit in such capacity.

Pending the trial of this case Scarborough either paid or settled the claims of subcontractors and here asks reimbursement.

On October 25, 1949, for value received, Gillenwater executed and delivered to Victoria Bank & Trust Company a promissory note for the principal sum of $10,000. A part of the money evidenced by this note was advanced to Gillenwater for the purpose of paying laborers and materialmen on the McCan job. The indebtedness due to the bank was secured by an assignment which was a comparatively simple and familiar instrument whereby a construction contractor assigned such monies as should become payable to him under a contract with an owner who desired the construction of a building. The assignee was a financial institution which advanced money to the contractor, enabling him to perform his agreement with the owner. The owner in this case, McCan, was not a party to this arrangement. Notice of this assignment was duly filed in the office of the County Clerk in accordance with the provisions of Article 260-1, Vernon's Ann.Civ. Stats.

This suit was instituted by Victoria Bank & Trust Company against E. E. Gillenwa-

ter on certain notes representing renewals of the $10,000 above described. The bank also sued Claude K. McCan seeking to recover from him that part of the contract price still retained by him. McCan answered by way of interpleader alleging that various parties, naming certain materialmen and subcontractors on the project and Fidelity & Deposit Company of Maryland were making claims against him for the unpaid balance of the contract price and tendered the fund into the registry of the court. In reply to the interpleader of McCan the materialmen and subcontractors answered claiming the right to be paid out of this fund and also seeking judgment for the sums alleged to be due them against Fidelity & Deposit Company of Maryland as surety on the performance bond.

Fidelity & Deposit Company of Maryland answered claiming the entire amount of the fund by subrogation and by virtue of the written assignment to it by Gillenwater, which was prior in time to the assignment given to the bank.

By way of cross-action, Fidelity & Deposit Company of Maryland sought judgment over against Jack U. Scarborough, Independent Executor of the Estate of Mrs. Minnie S. Welder, deceased, under the indemnity agreement.

Judgment was entered awarding the entire amount of the fund in question to the bank, less certain attorney's fees and costs of court awarded to McCan. The several materialmen and subcontractors recovered judgment of and from Fidelity & Deposit Company of Maryland for the amounts of their respective claims, and judgment over against Jack U. Scarborough, in his representative capacity for the amount of such judgment, together with costs and attorney's fees.

Judgment was also rendered against Gillenwater for Jack U. Scarborough in his representative capacity for the full amount of the judgment against him and for costs of court.

From that judgment Fidelity & Deposit Company of Maryland and Jack U. Scarborough, Independent Executor of the Estate of Minnie S. Welder, Deceased, have prosecuted this appeal.

The primary basis of the trial court's judgment was that the bank's assignment was a "protected assignment" under the provisions of Article 260–1, and hence superior to the rights of appellants. The judgment is attacked upon two grounds, viz.:

1. That the assignment by Gillenwater to the Bank of the account involved does not come within the provisions of Article 260–1, Vernon's Ann.Civ.Stats.

2. That under the theory of equitable subrogation, appellants acquired rights in and to the funds involved which are superior to the bank's assignment under Article 260–1, if said article be considered applicable to the case.

Article 260–1 is a comparatively recent statute, having been passed in 1945 by the 49th Legislature, page 463, Ch. 293, and has been the subject of three articles in Law Reviews, namely, 25 Texas Law Review 606; 30 Texas Law Review 233; 4 Baylor Law Review 392. It has been construed by this Court in one particular in the case of Keeran v. Salley, Tex.Civ.App., 244 S.W.2d 663, writ refused. It has also been discussed in two federal cases, In re Cumings, D.C., 99 F.Supp. 690, and Second National Bank of Houston v. Phillips, 5 Cir., 189 F.2d 115, reversing the case of In re American Creameries, D.C., 90 F.Supp. 618. It was suggested by Judge Hutcheson in the case last cited that the statute was enacted "as a part of the general wave of opposition throughout the states to the unduly restrictive effect, on the extension of business credit of the unauthorized extensions, of the Ratner decision, * * *." [189 F.2d 117.] Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991.

Mr. Thomas Gee, writing in 30 Texas Law Review 234, 240, suggests that the enactment was probably due to the decision in Corn Exchange National Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, construing Section 60, sub. a of the Federal Bankruptcy Act; 11 U.S.C.A. § 96, sub. a. The Legislature in the emergency

clause simply recited that "The fact that the present law concerning the assigning of accounts is confused and is impairing the flow of credit in its normal channels, thus endangering the orderly procedure of business, and the fact that under this confusion and uncertainty of law, banks and other loaning agencies cannot make necessary loans, create an emergency * * *."

From the wording of the act itself it appears that its purpose was to encourage accounts receivable financing. A method whereby publicity could be given to the assignment of an account so as to prevent its being set aside as a preference in bankruptcy proceedings is also provided. A change is made in the common law rule as to priority of assignments of accounts. This was accomplished by a setting forth of a method whereby a notice of assignment could be filed in a public place and thus become "protected assignment." The law provides that:

"Whenever any person, firm or corporation shall in good faith take a protected assignment of any account or accounts, which shall not have been satisfied, cancelled or released by the assignor, all creditors of, and all subsequent assignees, purchasers and transferees of or from the assignor shall be conclusively deemed to have received notice of such assignment, dating from the time of the filing for record of the notice of assignment hereinabove provided; and after such filing for record, no purchaser from the assignor, no creditor of any kind of the assignor, and no prior or subsequent assignee or transferee of the assignor, holding an assignment not protected, or holding an assignment under a notice of assignment subsequently filed for record, shall in any event have, or be deemed to have acquired, any right in the account or accounts so assigned or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights therein of the assignee named in such prior protected assignment."

It appears therefore that Article 260–1, if it applies to the assignment, gave to the bank a prior claim in and to the funds involved superior to any and all assignments which may have been executed by Gillenwater to any of the appellants herein.

Appellants, however, insist that said article does not apply to the assignment here involved. They base their contention upon the definition of "account" and "account receivable" contained in section 1 of the act and say that subdivision (d) thereof renders the article inapplicable to the assignment. Taking the words applicable to the type of assignment herein involved and paraphrasing slightly, it seems that "account" or "account receivable" means a future right to the payment of money to become due under an existing contract, provided that the assignment of such right is not subject to special statutory provisions of the State or of the Federal government relative to the rights of creditors of the assignor or to successive assignees from the assignor. It is clear, and no contention to the contrary is made, that the statutory definition of "account" or "account receivable" comprehends more than the ordinary account receivable of a merchant and that unless defeated by the provisions of subsection (d) of the statute, the definition includes the assignment of sums to become due to a contractor under a building or construction contract. The assignment of the right referred to in subsection (d) of the statute is the right of the contractor to receive money from the owner under a construction contract. Such right is not subject to the statutory provisions relating to the fixing of mechanics' liens. These statutes provide that mechanics, contractors and materialmen may fix liens against the properties of an owner, and such enactments may operate also to impound funds in the possession of the owner. 29 Tex.Jur. 550, Mechanics' Liens, § 78. They do not purport to control assignments made by a contractor to an agency such as a bank which is financing his construction business.

It is well stated in appellee's brief, that:

"Insofar as paragraph (d) is concerned, the language clearly indicates an intention to exclude from the coverage of the statute only those situations where statutory provisions specifically

provide that upon assignment of a right to the payment of money the rights of general creditors of the assignor are or are not affected or where the priority of successive assignments made by the assignor himself is specifically established. An example of the first type of situation might be an assignment without valuable consideration which is by Article 3997, R.C.S., declared void as to prior creditors if the assignor's property in the state subject to execution is insufficient to satisfy his debts. An example of the second type of situation might be the execution of successive assignments by a contractor on a Federal Government job of his claim against the United States, some of which assignments do not comply with the provisions of Title 31, Sec. 203, U.S.C. [31 U.S.C.A. § 203], and thus as against the United States need not be honored like those assignments that do comply. Appellee contends that for several reasons this language in paragraph (d) does not refer to the Texas mechanic's lien statutes.

"First, the mechanic's lien statutes do not purport to deal specifically with the assignment of the contract price. Article 5461, R.C.S., provides that an owner, upon receipt of notice of unpaid bills may retain in his hands the amount of the bills. This provision goes to the basic right of the contractor to receive the contract price and is not a specific provision with regard to priorities arising from assignment of the contract price.

"Second, the mechanic's lien statutes have no effect on the priority between an assignee of the contract price and general creditors of the contractor. It is true that the cases hold that upon the giving of the statutory notice to the owner the balance of the contract price is impounded for the benefit of the laborers or materialmen, but this rule arises by implication from the right of the owner to retain the contract price, which right he has regardless of any assignment. Thus the mechanic's lien statutes do not specifically deal with the effect of an assignment upon the rights of any creditors, and if they by implication give priority to laborers and materialmen, they are a particular class of persons, not general creditors.

"Third, the mechanic's lien statutes have no effect whatsoever upon the priority of successive assignments made by the contractor himself. Under paragraph (d) of the definition in Article 260–1, there need not be excluded situations where priority arises from the basic right of the assignor to receive payment. Laborers and materialmen are not actually successive assignees of the contractor, but acquire their rights by reason of the fact that the owner may retain the balance of the contract price."

The mechanic's lien statute relates to the relationship between the owner, contractor, sub-contractors, materialmen and laborers. They do not relate to the relationship between a contractor and his assignee. It may be that the result of compliance with the mechanic's and materialmen's statutes would to be to prevent funds from passing into the hands of the contractor and thus prevent their being received by the assignee, but this circumstance does not place the assignment of a construction contract beyond and without the protection of the statute. Such holding would defeat the purpose thereof,—the encouraging of account receivable financing—by excluding from its benefits one of the most important species of contracts particularly adaptable to this form of financing.

We next consider appellants' theory of subrogation. The statute being applicable, it follows that any or all claims asserted by appellants under Gillenwater, the contractor, are necessarily subordinate to those of the bank holding under a protected assignment. If appellants' claims are to be held superior to that asserted by the bank they must originate from McCan as the owner. The appellant Jack U. Scarborough, as independent executor of the estate of Minnie S. Welder, deceased, paid off certain claims held against Gillenwater by mechanics and

materialmen. These claims were derivative rather than original, 29 Tex.Jur. 459, Mechanic's Liens, § 4, and none of them had been perfected as required by statute. Absent a contract so providing, these accounts constituted no claim against funds in McCan's hands which could be asserted against the bank holding under a protected assignment. The building had been completed according to the plans and specifications agreed upon between McCan as owner and Gillenwater as contractor. Therefore, without a contractual provision so providing, McCan would have no right to withhold any of the contract price from the contractor. It is an elementary principle of law that where a contractor defaults in performance, he cannot demand that the owner pay him the contract price, O'Neil Engineering Company v. First National Bank, Tex.Com.App., 222 S.W. 1091, but that is not the factual situation presented here.

This then brings us to a consideration of the retainage provision of the contract between Gillenwater and McCan. The contract provides that:

"Monthly payments will be made to the contractor for ninety (90%) of the work done and material in place and delivered on premises, and the balance 10% when the contract is completed and accepted, and contractor has furnished satisfactory evidence that no bills are outstanding against the job. The contractor will submit an itemized statement to the Owner for his approval three days before payment is to be made and same will be based on the amount allowed by the Superintendent."

The performance bond given by Gillenwater as principal and Fidelity and Deposit Company as surety provides:

"That if the Contractor, or his, their or its subcontractor or subcontractors, fail to duly pay for any labor, materials, team hire, sustenance, provisions provender or any other supplies or materials used or consumed by such contractor or his, their, or its subcontractors in performance of the work contracted to be done, the Surety will pay the same in any amount not exceeding the sum specified in the bond, together with interest as provided by law."

However, there is no provision in the contract between McCan and Gillenwater authorizing McCan to hold back money due on the contract price until the surety has paid such accounts. The only provision allowing the withholding of money is above set out relating to the ten per cent retainage. The situation therefore presented is whether the executor as the assignee of mechanics and materialmen who have failed to perfect their liens under the applicable statutory provisions is entitled to receive this retainage—a part of the money tendered by McCan—as against the bank which holds a protected assignment. This question seems to be squarely answered by the recent decision of the Supreme Court in Citizens Nat. Bank in Abilene v. Texas & P. R. Co., 136 Tex. 333, 150 S.W.2d 1003, in which it was held that as the provision for retainage was adopted for the protection of the owner and was not a contract for the benefit of third persons, the assignee of the contractor had a prior claim to that of materialmen who had not perfected statutory liens.

It follows that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

Affirmed.