CORPUS CHRISTI BANK AND TRUST, Petitioner,

v.

Chester SMITH et al., Respondents.

No. B–4883.

Supreme Court of Texas.

June 4, 1975.

Rehearing Denied July 23, 1975.

Wood, Boykin & Wolter, Mark W. Owen, Corpus Christi, for petitioner.

Wood, Burney, Nesbitt & Ryan, Shelby A. Jordan, Luther & Karchmer, Max J. Luther, III, Milton W. Walton, Meredith & Donnell, Finley Edmonds, Sorrell, Anderson & Sorrell, William R. Anderson, Jr., Harold Alberts, James F. McKibben, Jr., Asst. City Atty., Corpus Christi, for respondents.

POPE, Justice.

Corpus Christi Bank and Trust contends that its security interest in certain funds retained by the City of Corpus Christi under a construction contract should prevail over the claims of certain materialmen and subcontractors who failed to perfect their rights against a payment bond given under Article 5160. The trial court, sitting without a jury, rendered judgment for the materialmen and subcontractors giving them judgment against the original contractor and also for the retained funds. The court of civil appeals affirmed. 512 S.W.2d 761. We reverse that part of the judgment which denied the Bank's secured claim to the retained funds and render judgment that the Bank recover the funds.

On March 12, 1971, Manson Industries entered into a contract with the City of Corpus Christi to repair damages to the municipal airport which were caused by Hurricane Celia. The contract required Manson to provide performance and payment bonds in the sum of $22,250.00, the amount of the contract price. Manson provided those bonds pursuant to the contract and Article 5160, Tex.Rev.Civ.Stat.Ann. (1971). The project was financed through the Bank, which advanced funds to Manson Industries as needed. The advancements were secured by agreement by Manson's accounts receivable then owned or thereafter acquired. Similar security agreements were entered into on February 26, 1971, and July 27, 1971. The Bank filed financing statements with the Secretary of State on December 31, 1970 and January 15, 1971. Manson began the repair work in early April, 1971, and in November of that year, the city engineer certified the work as completed in substantial compliance with the contract.

Several individuals and firms came forward with claims for unpaid materials and labor. They were Chester Smith, Armstrong Lumber Co., Thurman-Fondren Glass Co., Inc., A.B.C. Hardware and Supply Co., Baker Roofing and Sheet Metal Co., and Heath Floor Co., Inc. Chester Smith filed suit against the contractor, Manson Industries, the Bank as Manson's assignee of the contract rights and accounts receivable, and the City of Corpus Christi. The City tendered into the court the sum of $13,221.10 which it had retained and interplead the other parties who asserted claims to the funds. The City was then dismissed and is not a party to the suit. Since A.B.C. Hardware and Supply Co. gave notice of its claim as required by Article 5160, that company recovered against the surety on the payment bond by force of its perfected claim and it is no longer in the case.

The Bank claims that it has prior claim upon the remaining funds because it perfected its security interest. The materialmen and subcontractors say that they own the funds because they are third-party beneficiaries under the contract which the City made with Manson. They do not and could not assert any rights under the payment bond since they did not comply with Article 5160. The controlling question presented in this case is whether the following provision of the contract between the City of Corpus Christi and Manson Industries as the original contractor made the materialmen and subcontractors third-party beneficiaries under the contract:

Whenever the improvement provided for by the contract shall have been completely performed on the part of the Contractor as evidenced by the Engineer in the Certificate of Final Inspection, a final estimate showing the value of the work will be prepared by the Engineer as soon as the necessary measurements and computations can be made. All prior estimates upon which payments have been made are subject to necessary corrections or revisions in the final payment. The amount of this final estimate, less any sums that have been deducted or retained under the provisions of the contract, will be paid the Contractor within thirty (30) days after final acceptance *provided the Contractor has furnished to the City satisfactory evidence that all sums of money due for any labor, materials, apparatus, fixtures, or machinery furnished for and used in the prosecution of the work have been paid;* or that the person or persons to whom the sum may respectively be due have consented to such final payment. . . . (Emphasis added.)

The intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision. Banker v. Breaux, 133 Tex. 183, 128 S.W.2d 23 (1939). In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed

as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties. Employers' Liability Assur. Corp. v. Trane Co., 139 Tex. 388, 163 S.W.2d 398 (1942); Citizens Nat. Bk. v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941); National Bank v. Gulf, C. & S. F. Ry. Co., 95 Tex. 176, 66 S.W. 203 (1902); Republic Nat. Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex.Civ.App.1968, writ ref'd n.r.e.); 17 Am.Jur.2d, Contracts § 304 (1964).

The assertion of rights as third-party beneficiaries to funds retained under construction contracts has often been the source of claims by materialmen and laborers. This court has consistently denied the claims. Citizens Nat. Bk. v. Texas & P. Ry. Co., supra ; Tezel & Cotter v. Roark, 301 S.W.2d 179 (Tex.Civ.App.1957, writ ref'd); Scarborough v. Victoria Bank & Trust Co., 250 S.W.2d 918 (Tex.Civ.App.1952, writ ref'd); C. A. Dunham Co. v. McKee, 57 S.W.2d 1132 (Tex.Civ.App.1933, writ ref'd); see also Barfield v. Henderson, 471 S.W.2d 633 (Tex.Civ.App.1971, writ ref'd n.r.e.); Henderson v. Couch, 274 S.W.2d 844 (Tex. Civ.App.1955, no writ); Houston Shell & Concrete Co. v. Minella, 269 S.W.2d 953 (Tex.Civ.App.1954, writ ref'd n.r.e.).

In the first case, above cited, Texas & Pacific Railway Company contracted with Locke, a general contractor, for grading and culvert work. Locke financed the project with Citizens National Bank, who secured the loan by taking an assignment of funds due Locke under the contract with Railway. The owner, Railway, also retained fifteen percent of the funds due under the contract, pursuant to a contract provision nearly identical to that involved in this case.[1] After completion of the work, the bank sued to recover the funds by virtue of its assignment contract with Locke, and the materialmen intervened claiming to be third-party beneficiaries of the contract between Locke and Railway. This court held that the retainage provision in the contract was intended to benefit Railway to protect it against lien claims on its property, and was not intended to benefit the third-party materialmen.

A similar Texas case is Scarborough v. Victoria Bank & Trust Co., 250 S.W.2d 918 (Tex.Civ.App.1952, writ ref'd). The facts are very similar to the instant case, except that Scarborough involved a private owner. The owner, however, required the general contractor to execute a performance bond in order to insulate the owner's property from liens. In spite of the fact that the owner's property was adequately protected, it was held that the retainage provision was not a contract for the benefit of materialmen.

The materialmen and subcontractors here forcibly argue and the courts below have held that all of the prior decisions concerning claims to retainage as third-party beneficiaries are distinguishable since no lien can be enforced against the property of a municipality and, unless the retainage provision was meant to benefit them, it is an idle provision which is meaningless apart from such an intent.

A municipality has a number of reasons for including the retainage provision in its contract with the contractor. The provision

1. Upon completion of the work herein provided, the Chief Engineer shall have an inspection made and if the work is complete and satisfactory, a final statement of all the work done and moneys due the Contractor shall be made by the Railway Engineer, whereupon, after the Contractor has furnished written evidence satisfactory to the Railway, that he has paid in full all amounts that may be due by him to any and all persons who may have performed labor or furnished materials or supplies to the Contractor in connection with the work to be done hereunder, the Railway shall pay to the Contractor the full amount earned under this contract, less payments previously made, as soon as final statement can be audited and passed for voucher in the course of the Railway's business.

insures the diligent prosecution of the work by affording an incentive to the contractor to finish his work. It affords protection and indemnity to the public agency in the event the contractor abandons his work. It supplies salvage funds for the contractor's surety in the event it makes good on defaults for which it is bound. 64 Am.Jur.2d, Public Works and Contracts § 95 (1972); Employers' Cas. Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690 (1931); Trinity Universal Ins. Co. v. Bellmead State Bank, 396 S.W.2d 163 (Tex.Civ.App.1965, writ ref'd n.r.e.); Aetna Cas. & Sur. Co. v. Robertson Lumber Co., 3 S.W.2d 895 (Tex.Civ. App.1928, no writ).

A part of the contract between the City and contractor was the requirement for a payment bond in conformity with Article 5160. The City prescribed the form of the payment bond including the words that the contractor and surety "are held and firmly bound unto the City of Corpus Christi . . . and unto all persons, firms, and corporations who may furnish materials for or perform labor upon the buildings, structures, or improvements referred to in the attached contract . . . to be paid in Nueces County, Texas, for the payment of which sum well and truly be made, we bind ourselves, our heirs, executors, administrators and successors, jointly and severally . . ."

The City, as appears from both the contract provision and the provisions of the prescribed and required payment bond, was interested in protecting the materialmen and subcontractors, and it clearly provided protection in the form of a bond which also conferred upon them the right to recover under the bond. That plan was more consistent with an intent on the part of the City to afford protection to the materialmen and subcontractors who complied with Article 5160 by giving timely notice than to contractually obligate the City. The requirement for the Article 5160 performance and payment bonds shows an intent to insulate itself contractually by the substitution of a source for payment. Other provisions of the contract between the City and Manson, the contractor, further show the absence of an intent to benefit materialmen and subcontractors otherwise. One provision is: " . . . the City will not recognize any subcontractor on the work."

In our opinion, it appears that the City intended to protect the materialmen and subcontractors by its contractual requirement for an Article 5160 payment bond, but it does not "clearly appear," as required by *Citizens* that the City intended to make them claimants against the City on the contract. Since they did not perfect their claims through Article 5160, their claims are subordinate to the secured claim of the Bank.

The court of civil appeals cited Cove Irr. Dist. v. American Surety Co., 42 F.2d 957 (9th Cir. 1930) and General Electric Supply Co. v. Epco Constructors, Inc., 332 F.Supp. 112 (S.D.Tex.1971) in support of its holding that the materialmen and laborers were third-party beneficiaries of the contract between the City and the general contractor. The materialmen and laborers rely also upon Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) and Avco Delta Corporation Canada Ltd. v. United States, 484 F.2d 692 (7th Cir. 1973). In *Cove*, the public agency required its contractor to furnish a payment bond and to indemnify the public agency against any loss or damage. The laborers and materialmen in that case proceeded against the surety on the contractor's bond, and quite correctly the court ruled that the claimants could recover, for that was the purpose intended by the public agency's requirement for a payment bond. *General Electric* is also distinguishable from the instant case because the materialman there had perfected his lien under Article 5160. *Pearlman* involved a priority contest for retained funds between the general contractor's trustee in bankruptcy and the surety on a payment bond. *Avco*, however, is essential-

**506**

ly in point with the present case. The Court of Appeals for the Seventh Circuit, applying its interpretation of Illinois law, held that a retained fund was created for the benefit of the subcontractors, laborers and materialmen. The court found that the intent to benefit third parties was evident from the contract. We do not find sufficient evidence of such intent in this case.

The materialmen and subcontractors also argue that the Bank does not have a superior claim to the retained funds since it does not have a security interest in them. Although the Bank executed security agreements describing the collateral, and gave value therefor, the respondents claim that the debtor, Manson, has no rights in the collateral, and consequently the Bank does not have a proper security interest. Tex. Bus. & Comm.Code Ann. § 9.203 (Supp. 1974). The argument is that Manson had no rights in the collateral, the retained funds, because its contract with the City conditioned payment of the retainage upon Manson first paying all subcontractors and materialmen.

 The contention that payment by the contractor of all claims of subcontractors, laborers and materialmen, under contract provisions such as involved here, is a necessary condition to the contractor's right to the retainage has been expressly rejected by this court. Citizens National Bank v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941); Scarborough v. Victoria Bank & Trust Co., 250 S.W.2d 918, 923 (Tex.Civ.App.1952, writ ref'd); Tezel & Cotter v. Roark, 301 S.W.2d 179 (Tex.Civ.App. 1957, writ ref'd). Since Manson did have rights in the collateral, it follows that the Bank's security agreements were sufficient to give it a security interest in the retained funds, which is superior to that of general creditors. Tex.Bus. & Comm.Code Ann. § 9.201 (Supp.1974).

We affirm that part of the judgment below which awarded judgment against Lewis Manson d/b/a Manson Industries. We reverse that part of the judgment which awarded recovery to the materialmen and subcontractors for their claims to the retained funds. We render judgment that Corpus Christi Bank & Trust recover the funds interpleaded. Costs are adjudged against the respondents.