# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

------------------

## NO. 03-01-00601-CV

------------------

**Don Cox d/b/a The Don Cox Company, Appellant**

**v.**

**First River Place Reserve, Ltd.; Sierra Development Corporation;
and Texas Highlands, Inc., Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. 96-00899, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING**

---

Don Cox, doing business as The Don Cox Company, appeals the take-nothing summary judgment rendered against his claims for breach of contract and various torts arising from a commission paid on a real estate sale. Cox contends that appellees breached agreements to pay him a three-percent commission and defrauded him into accepting a lower commission. He raises five issues on appeal

regarding the applicability and effect of a section of the Real Estate Licensing Act[1] (ARELA@) on his breach of contract and tort claims. He contends that RELA does not apply to this cause and that, even if it does, the relevant agreements satisfy RELA=s requirements. He also asserts that, even if the commission agreement was not sufficiently memorialized in writing, the partial performance of the agreement, combined with the existing writings, make the agreement enforceable. We will affirm the judgment as to the breach of contract claim, but reverse the judgment regarding the remaining causes of action and remand them for further proceedings. We overrule Cox=s motions for sanctions.

## BACKGROUND

Cox and Joe Duncan were real estate agents.[2] Origin Systems hired Cox as its exclusive representative in its search for office space to rent or buy in Austin. Cox later asked Duncan for help in the search. In October 1993, Duncan approached First River Place Reserve, Ltd. regarding some of its property in the River Place development in Austin. Reserve agreed to pay Duncan a commission of six percent of the purchase price if he brokered a sale within 180 days. Duncan avers that at the time of this agreement, he told Reserve that he intended to split the commission with Cox, but the agreement does not

---

[1] Tex. Rev. Civ. Stat. Ann. art. 6573a, ' 20(b) (West Supp. 2002).

[2] Both Cox and Duncan have companies bearing their namesCThe Don Cox Company and Duncan Commercial Group, L.C. Because there is no reason in this appeal to distinguish between these individuals and their companies, we will use the individuals= names to refer to both.

mention Cox or any other broker. The agreement between Duncan and Reserve was not exclusive; Reserve could sell the property independently.

Origin sent Reserve a non-binding letter of intent for its parent company, Electronic Arts, Inc., to purchase property in River Place from Reserve. The offer specified that the commission would be three percent each to Duncan and Cox. After a counteroffer, Origin on February 24, 1994 sent another non-binding letter of intent for Electronic Arts to purchase property in River Place from Reserve; the letter again specified three-percent commissions each for Duncan and Cox. A representative from Reserve signed the letter, accepting and agreeing to its terms. Among those terms, however, were the specifications that the terms of the letter were not binding and that Aneither party shall have any legal obligation to the other until execution of the contract contemplated below.@

Before the parties signed the contract to sell the property, Reserve told Duncan that both brokers would have to reduce their commission in order for the sale to proceed. Reserve stated that the lower than expected sale price would not support the agreed six-percent commission and that the brokers must accept a total of three percent of the sale price. Based on Reserve=s representations, the brokers counteroffered, requesting a four-percent commission. Reserve apparently agreed, because the sale contract signed by representatives of Reserve and Origin in August 1994 called for a two-percent commission each for Duncan and Cox. Because the sale was contingent on various zoning changes, it did not close until June 1995.

Despite a clause in the August 1994 sale contract in which buyer and seller represented that they had not agreed to pay a commission to anyone other than Duncan and Cox, Reserve separately

authorized the title company in June 1995 to pay an additional two-percent commission to Sierra Development Corporation. Representatives of Origin and Reserve signed the HUD-1 Settlement Statement that reflected a payment of equal commissions of $45,480.46 each to Sierra, Duncan, and Cox.

Subsequently, Cox sued Reserve, Sierra, and Texas Highlands, Inc., alleging several causes of action. He contended that the failure to pay the full six-percent commission to him and Duncan breached a commission agreement.[3] He claimed that appellees made fraudulent representations to persuade him and Duncan to agree to the reduced commission; Cox alleged fraud, real-estate fraud, and constructive fraud. He requested that a constructive trust be placed on the commission paid to Sierra. He alleged that appellees interfered with the agreement between him and Duncan to split a six-percent commission. Cox also alleged interference with his prospective economic advantages, promissory estoppel, and equitable estoppel.

Appellees moved for summary judgment, contending that no enforceable contract to pay Cox a three-percent commission existed, that Cox was not entitled to sue on the October 1993 agreement, that he did not rely on representations that the sale could not handle more than a three-percent commission, that he negotiated the final commission agreement after the initial commission agreement expired, that appellees did not owe him a duty, and that his claims were barred by the statute of frauds. The court

_____

[3] Cox sues only for half of the commission payable under the October 1993 commission agreement. Cox contends that Duncan=s agreement to split the commission with him constituted an assignment by Duncan to Cox of the right to half of the commission payable to Duncan under the October

**4**

granted the motion for summary judgment against Cox=s claim for breach of contract, but denied it in all other respects.

Appellees then filed a second motion for summary judgment relying solely on the argument that, under RELA section 20(b), the lack of a written, signed commission agreement precluded Cox from recovering under any theory. *See* Tex. Rev. Civ. Stat. Ann. art. 6573a, ' 20(b) (West Supp. 2002). Noting that Cox had filed a second amended petition that included his breach of contract claim, appellees reminded the court that it already had rejected that claim. Cox responded by contending that writings existed that satisfied the statutory requirements, that section 20(b) did not apply to the commission-splitting agreement between himself and Duncan, and that appellees were not entitled to use RELA to perpetrate a fraud. Cox also requested that the court withdraw the summary judgment granted against him on the breach of contract claim.

The court declined to vacate the prior partial judgment and, furthermore, granted appellees= motion against Cox=s remaining claims.

### STANDARD OF REVIEW

Appellees= motions for summary judgment contained both traditional and no-evidence aspects. *See* Tex. R. Civ. P. 166a.

When reviewing a traditional summary judgment, we view the evidence in the light most favorable to the non-movant, and we make every reasonable inference and resolve all doubts in favor of the

1993 commission agreement. Duncan has never been a party to this suit.

**5**

non-movant.  *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  Summary judgment is properly granted only when the movant establishes there are no genuine issues of material fact to be decided and he is entitled to judgment as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Memorial Med. Ctr. v. Howard*, 975 S.W.2d 691, 692 (Tex. App.CAustin 1998, pet. denied).  A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff=s theories of recovery or plead and prove as a matter of law each element of an affirmative defense.  *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

A respondent to a no-evidence summary judgment motion is not required to marshal proof but needs only to point out evidence that raises a fact issue on the challenged elements.  Tex. R. App. P. 166a(i), cmt.1997.  In reviewing a no-evidence summary judgment, we apply the same standard used in reviewing a directed verdict.  *Moore v. K-Mart Corp.*, 981 S.W.2d 266, 270 (Tex. App.CSan Antonio 1998, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no pet.).  We review the evidence in the light most favorable to the respondent, disregard all contrary evidence and inferences, and resolve all doubts in the respondent=s favor.  *Moore*, 981 S.W.2d at 70.  A no-evidence summary judgment is improperly granted if the respondent points out more than a scintilla of probative evidence that raises a genuine issue of material fact.  *Id.*; Tex. R. Civ. P. 166a(i).

## DISCUSSION

Cox raises five issues on appeal.  We will address the issues as they concern the  separate partial summary judgments against the contract and tort causes of action.

**6**

*Breach of contract claim*

The enforceability of real-estate commission agreements is subject to RELA section 20, which provides in relevant part as follows:

> (b) An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by the party to sign it.
>
> . . . .
>
> (d) This section does not apply to an agreement to share compensation between persons licensed under this Act. This section does not limit a cause of action between brokers for interference with business relationships.

Tex. Rev. Civ. Stat. Ann. art. 6573a, ' 20 (West Supp. 2002). For assistance in interpreting this statute of frauds, we may look to cases interpreting the general statute of frauds. *Pickett v. Bishop*, 223 S.W.2d 222, 223 (Tex. 1949); *Corman v. Carlson*, 638 S.W.2d 21, 22 (Tex. App.CDallas 1982, writ ref=d n.r.e.). To satisfy the statute of frauds, a written memorandum of an agreement must be Acomplete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony.@ *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978) (interpreting Tex. Bus. & Com. Code Ann. ' 26.01(a) (West 2002)). For instance, a contract for the sale of property that includes the pertinent details of a promise to pay a broker satisfies the requirement even if the broker is not a signatory or direct party to the sale contract. *Callaway v. Overholt*, 796 S.W.2d 828, 831-32 (Tex. App.CAustin 1990, pet. denied).

**7**

Although Cox was not a signatory to the August 1994 sales agreement, it is undisputedly a memorandum that satisfies the writing requirement of section 20(b). Reserve paid Cox the two-percent commission described therein. Cox argues, however, that the August 1994 agreement was induced by fraud and that he is entitled, under previous written and oral agreements, to a three-percent commission.

Appellees asserted in their motion for summary judgment against Cox=s contract claim that Cox could not establish that he was a party to or an intended beneficiary of any written contract for a three-percent commission signed by any appellee.

Cox submitted three documents to show compliance with the requirement of a signed writing: the October 1993 commission agreement, the February 1994 letter of intent, and the August 1994 sale contract. He also submitted affidavit testimony in support of his contention.

Cox contends on appeal that there is at least a fact question regarding whether he is a creditor-beneficiary or a third party to the October 1993 commission agreement between Reserve and Duncan. A creditor-beneficiary is one who benefits from a contract to which he is not a party through the satisfaction of a legal duty owed to him by the promisee. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002). A third party can enforce such a duty only if the contracting parties= intention to confer a direct benefit on the third party is clearly and fully spelled out in the contract. *Id*. The broker=s name is an essential element of a written commission agreement and cannot be supplied by parol evidence. *See Boyert v. Tauber*, 834 S.W.2d 60, 62 (Tex. 1992); *see also Knox v. Ball*, 191 S.W.2d 17, 23-24 (Tex. 1945) (intended third-party beneficiaries need not be named but intent to benefit them must be clear). There is a presumption against third-party beneficiary agreements, and we look at the language of the contract to

**8**

determine whether it clearly shows an intention to depart from that presumption. *MCI Telecomms. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). We examine the entire agreement and give effect to all the contract=s provisions so that none is rendered meaningless. *Id.*; *see also Stine*, 80 S.W.3d at 589. The intent of the parties to benefit third parties is controlling. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-05 (Tex. 1975) (contract provisions contemplated benefits third parties should receive).

Cox cannot enforce the October 1993 agreement. He is not named in the agreement, nor does the agreement refer to him or any third party other than the unnamed buyer. Thus, Cox cannot enforce the October 1993 commission agreement as a creditor-beneficiary or as a third party.

Cox contends that he is a third-party beneficiary to Origin=s February 1994 letter of intent to purchase the property, but that status is unavailing. The letter to Reserve states that Reserve will pay Cox a three-percent commission, but the letter also plainly states that it is non-binding. The opening paragraph of the letter provides:

> This is a non-binding Letter of Intent to Purchase the [property owned by Reserve]. Upon signing and acceptance of the general terms of this offer, we will submit a contract within ten working days for your review. This is intended to be a non-binding Letter of Intent, and neither party shall have any legal obligation to the other until execution of the contract contemplated below.

Cox argues that the fact that the letter states that it is non-binding is inconsequential because the parties accepted and performed the remaining terms of the letter, rendering all elements of the contract binding. *See Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943) (contract lacking mutuality can be rendered

**9**

enforceable by part performance). However, there is not a mutuality issue here between the contracting parties. We cannot ignore the plainly stated agreement between Reserve and Origin that the letter of intent was non-binding until the contract was executed. Cox cannot enforce an agreement that is non-binding between the contracting parties.

Cox also argues that the February 1994 letter of intent shows that he is an assignee of half of Duncan=s rights under the October 1993 agreement. Cox argues that the letter of intent shows that Duncan retained no control of half of the six-percent commission. But the February 1994 agreement does not show that Duncan assigned his rights to Cox, only that the seller and purchaser were considering allocating the commission. Further, as discussed, the February 1994 letter was explicitly non-binding.

Cox also argues that the payment of the two-percent commission, combined with other evidence, is a partial performance of the obligation to pay three percent that renders the promise to pay three percent enforceable. The summary judgment evidence is clear, however, that Reserve paid the two-percent commission to satisfy its express obligation under the August 1994 sale contract. This payment was not partial performance of an oral contract but full performance of a written agreement. Whether that written agreement was fraudulently induced is a separate issue. But there is no dispute as to the purpose of Reserve=s payment of the two-percent commission.

Cox also contends that the requirement in section 20(b) of a written, signed agreement does not apply to this cause because the relevant agreement is between himself and Duncan to share a commission. Oral agreements between brokers are enforceable under RELA section 20(d). Tex. Rev. Civ. Stat. Ann. art. 6573a, ' 20(d). The nature of Cox=s claim defeats his argument, however. Cox is not

**10**

suing Duncan and does not seek to enforce their agreement against him. This claim is not about the sharing

of the commission, but about the size of the commission to be shared. Cox=s complaint that appellees

promised to pay the brokers a six-percent commission concerns dealings between the brokers and the non-

broker appellees. The exclusion in section 20(d) of inter-broker agreements from the reach of section

20(b) does not supersede the requirement that the brokers=commission agreements with non-brokers be

written. *See* Tex. Rev. Civ. Stat. Ann. art. 6573a, ' 20(b). Cox can sue for a commission based only

upon breach of an agreement or promise evidenced by a writing signed by a representative of the party to

be charged. *Id.*

The summary judgment evidence does not reveal a genuine dispute of fact regarding the nonexistence of an enforceable contract on which Cox can recover a three-percent commission. The district court did not err by granting summary judgment against Cox on his breach of contract claim.

*Tort claims*

Cox also sued for fraud, real estate fraud, interference with his contractual relations with

Duncan, interference with Cox=s prospective economic advantages, constructive fraud, and promissory and

equitable estoppel, and requested a constructive trust. In their second motion for summary judgment,

appellees alleged solely that the lack of a signed, written commission agreement precludes all actions to

recover a commission in tort. *See Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 634-36

(Tex. 1997); *see also Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex. 1991).

Appellees also noted that the supreme court has held that the doctrine of promissory estoppel is not an

exception to the requirements of section 20(b). *Harkinson*, 941 S.W.2d at 636. Thus, appellees argued,

Cox could not proceed with any of his causes of action. The district court granted summary judgment against all of Cox=s tort causes of action.

We conclude, however, that the lack of an enforceable agreement does not necessarily mean that all tort actions are barred. *See Harkinson*, 941 S.W.2d at 635 (citing *Clements v. Withers*, 437 S.W.2d 818, 820 (Tex. 1969)). *But see Texas Builders v. Keller*, 928 S.W.2d 479, 482 (Tex. 1996) (cannot circumvent section 20(b) requirements by claiming lost commission as fraud). RELA bars recovery on unwritten contracts, but does not foreclose tort actions for dishonesty in negotiating or inducing breach of written contracts that satisfy the requirements of section 20(b).

We conclude that summary judgment against Cox=s tort claims was improper because they are based on the written August 1994 sale agreementCthe enforceability of which has not been challenged. RELA section 20(b) was designed to avoid deception in the proof of the content of oral promises to pay commissions. *Harkinson*, 944 S.W.2d at 635 (written after *Keller*, 928 S.W.2d at 482, and citing *Clements*, 437 S.W.2d at 821). Though the August 1994 sale contract is not itself a commission agreement, it is a written memorandum signed by a representative of the party sought to be charged. In it, Reserve represents that the four-percent total commission paid to Cox and Duncan is the only commission owed on the transaction. The contract states that

> each party hereby represents and warrants to the other party that it has not contacted or entered into any agreement with any real estate broker, agent, finder or any other party in connection with this transaction and that it has not taken any action which would result in any real estate broker=s finder=s or other fees or commissions being due or payable to any other party with respect to the transaction contemplated by this Contract.

Cox contends that this representation induced him and Duncan to accept a two-percent commission each. He submits evidence indicating that Reserve thereafter directed the payment of a two-percent commission to another broker. Cox=s claims depend on proof of deception in the making of representations that were committed to writing and signed by the party making the representations. RELA section 20(b) does not prevent him from claiming that this behavior is tortious, although we do not reach the merits of his causes of action.

We conclude that, based on the record before us, section 20(b) does not bar Cox=s tort causes of action as a matter of law. Summary judgment on that basis was improper against Cox=s tort claims. We sustain his issues in that regard.

Appellees also argue that the district court should have granted summary judgment based on the reliance ground in their first motion for summary judgment. Cox complains that, after the court rejected this ground in appellees=first motion, appellees abandoned this issue by not reurging it in their second motion for summary judgment, citing *Frias v. Atlantic Richfield Co.*, 999 S.W.2d 97, 102 (Tex. App.CHouston [14th Dist.] 1999, pet. denied). Cox seeks sanctions for having to respond to these arguments. We conclude, however, that appellees may urge on appeal issues from their first motion for summary judgment. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5-6 (Tex. 1999). Because appellees properly raised this argument on appeal, we overrule Cox=s motions for sanctions and to strike appellees= surreply brief.[4]

---

[4] This reasoning also applies to defeat Cox=s motion for sanctions against appellees for urging alternate bases on appeal in support of the summary judgment against Cox=s breach of contract claims. These alternate bases were part of their original motion for summary judgment.

Appellees argue that the district court should have granted their first motion for summary judgment against the fraud-related causes of action on the ground that Cox did not rely on their representation that the sale of the property would not go forward unless the brokers accepted a commission totaling three percent. They contend that the brokers= negotiation for a four-percent total commission (two percent for each) shows that lack of reliance.

Cox alleged reliance in his second amended petition and supplied affidavits in support. In his second amended petition, he alleges that appellees

> represented to Duncan and Plaintiff that in order for the sale of the Property to go forward, the previously agreed upon commission on the sale (6%) would have to be reduced to 3%. Based solely on Defendants= representations, Duncan and Plaintiff reluctantly agreed with Defendants that they would accept a total combined commission of 4% of the sales price.
>
> . . . .
>
> Defendant=s material representations that the sale of the Property could not go forward if the seller was required to pay a 6% commission were false when made, as evidenced by the fact that a 6% commission was ultimately paid on the transaction. The payment of the 6% commission did not disrupt or defeat the transaction. Defendants= representations were a material inducement to Plaintiff designed and intended to make Plaintiff agree to negotiate a reduced commission and thereafter accept a 2% commission, and forego the previously agreed-upon 3% commission on the sale of the Property. Plaintiff reasonably relied on Defendants= false representations in reluctantly agreeing to reduce his commission on the sale of the Property.

In his response to the second motion for summary judgment, Cox alleged that appellees told the brokers that Athey would have to accept a reduced commission for the deal to go forward. . . . River Place=s representation in this regard was absolutely false, and River Place knew this at the time it lied to the brokers about the transaction not being able to carry a six percent commission.@ Cox relied on his and Duncan=s

**14**

affidavits to substantiate these claims. Duncan averred that appellees told him that the brokers Awould have

to reduce our commissions to enable the sale to go through. Based solely on these representations, which I

found out after the closing were entirely untrue, Mr. Cox and I reluctantly agreed to accept a reduced

commission.@ Cox swore that appellees

> informed us that the reason River Place had to cut Duncan Commercial=s and my
> commissions was that the sales price on the Property had been lowered, and thus the deal
> could not support or Acarry@ a six percent commission. . . . I never would have agreed to
> negotiate or accept a reduced commission if the Defendants had not misrepresented the
> truth about whether the deal could carry a six percent commission.

In these allegations and averments, Cox complains, not just that appellees said that the brokers would have

to accept a three-percent total commission, but that appellees misrepresented that the transaction could not

carry a six-percent commission.

We are not persuaded by appellees= argument that the brokers= negotiation for a four-

percent commission demonstrates a complete lack of reliance on appellees= representations. Although the

brokers apparently rejected the representation that they would have to accept a combined three-percent

total commission, their counteroffer for a four-percent total commission is evidence that they accepted the

representation that the transaction could not carry a six-percent commission. A genuine issue of material

fact exists regarding whether Cox relied on appellees= representation that the transaction could not carry a

six-percent commission.

**CONCLUSION**

**15**

We affirm the summary judgment against Cox=s claim for breach of contract. We reverse the summary judgment in all other respects and remand those issues to the district court for further proceedings. We overrule Cox=s motions for sanctions.

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   October 31, 2002

Do Not Publish

16