IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0202
════════════
 
Energy Service Company of 
Bowie, Inc., Petitioner,
 
v.
 
Superior Snubbing Services, 
Inc., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 1, 
2005
 
 
            
Justice Johnson, joined by Justice Wainwright, Justice Green, and 
Justice Willett, dissenting.
 
            
Daryll Faulk was injured while working in the course 
of his employment for Superior Snubbing Services, Inc. (Superior), who carried 
workers’ compensation insurance and thus was a “subscribing employer.” Faulk did 
not sue Superior 
for his injuries.[1] But he was working at a well site along 
with employees of Mitchell Energy Corporation (Mitchell), Energy Service Company 
of Bowie, Inc. (Energy), and others when he was injured. He sued them.
            
Energy and Superior were contractors for Mitchell. They 
did not execute agreements with each other, but both executed agreements with 
Mitchell. Their agreements with Mitchell contained indemnity provisions. As 
relevant to this appeal, Energy settled with Faulk and sued Superior for indemnity. 
Energy claimed that it was entitled to indemnity because Superior’s contract 
with Mitchell provided that Superior “shall protect, defend, indemnify and hold 
[Mitchell], its employees, partners, agents, representatives, invitees, 
contractors and their employees . . . harmless from and against all claims, 
demands, causes of action, suits or other litigation of every kind and character 
for injury to . . . [Superior], its employees, partners, agents, . . . which is 
incident to, arising out of, within the scope of, or in connection with the work 
to be performed.”
            
Superior denied that it owed indemnity to Energy, 
in part, on the basis of Texas Labor Code section 417.004 and the fact that 
Energy had not executed an indemnity agreement with Superior. Section 417.004 
provides:
 
In an 
action for damages brought by an injured employee, a legal beneficiary, or an 
insurance carrier against a third party liable to pay damages for the injury or 
death under this Chapter that results in a judgment against the third party or a 
settlement by the third party, the employer is not liable to the third party for 
reimbursement or damages based on the judgment or settlement unless the 
employer executed, before the injury or death occurred, a written agreement with 
the third party to assume the liability. (emphasis 
added)
 
 
I agree with 
the court of appeals that section 417.004 does not permit Energy to recover 
indemnity from Superior.
            
In construing a statute our objective is to determine and give effect to the 
Legislature’s intent, which, when possible, we discern from the words used. 
State v. Shumake, 199 S.W.3d 279, 284 
(Tex. 2006); City of San Antonio v. City of 
Boerne, 111 S.W.3d 22, 25 (Tex. 2003); 
State v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); see also Tex. Gov’t Code § 312.005. We look first to 
the “plain and common meaning of the statute’s words.” Gonzalez, 82 S.W.3d at 327. If the statute is clear and unambiguous, we 
must apply its words according to their plain and common meaning without resort 
to rules of construction or extrinsic aids. Fitzgerald v. 
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865-66 (Tex. 1999); St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). The 
statute’s words are to be read according to their ordinary meaning unless they 
are defined otherwise in the statute or a contrary intention is apparent from 
the context. See Taylor v. Firemen’s and Policemen’s Civil 
Serv. Comm’n of Lubbock, 
616 S.W.2d 187, 189 (Tex. 1981). In construing statutes 
there are instances where courts may disregard the literal meaning of a statute, 
but that is only when it is perfectly plain that the literal sense works an 
absurdity or manifest injustice. Gilmore v. Waples, 188 S.W. 1037, 1039 (Tex. 1916). It is 
inappropriate for courts to enlarge the meaning of any word in a statute beyond 
its plain and ordinary meaning by implication when legislative intent may be 
gathered from a reasonable interpretation of the statute as it is written. Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994). We 
must not give the words used by the Legislature an exaggerated, forced, or 
constrained meaning. See 
City of Austin v. Sw. Bell Tel. Co., 
92 S.W.3d 434, 442 (Tex. 2002). Every word of a statute 
must be presumed to have been used for a purpose. Eddins-Walcher Butane Co. 
v. Calvert, 298 S.W.2d 93, 96 (Tex. 1957). Likewise, every word 
excluded from a statute must also be presumed to have been excluded for a 
purpose. Cameron v. Terrell & Garrett, Inc., 618 
S.W.2d 535, 540 (Tex. 1981).
            
In my view, the plain meaning of the words used in section 417.004, “the 
employer is not liable to the third party for reimbursement or damages 
based on the judgment or settlement unless the employer executed, before 
the injury or death occurred, a written agreement with the third party to 
assume the liability” (emphasis added), is clear and unambiguous. The phrase 
“the third party” is used twice in the same sentence and clearly refers to the 
same third party in each instance—the third party seeking indemnity. Because the 
words “executed . . . with the third party” in the statute are clear and 
unambiguous, we apply the words according to their plain and common meaning 
without resort to rules of construction or extrinsic aids. Fitzgerald, 
996 S.W.2d at 865-66; Agbor, 952 S.W.2d at 505. We should not read the 
statute’s words other than according to their ordinary meaning, because a 
contrary intention is not apparent from the context. See Taylor, 616 S.W.2d at 189. So read, the language precludes indemnity 
unless the third party was a signatory to the written agreement executed by the 
subscriber.
            
Further, we presume all the words in the statute were used purposely by the 
Legislature. See Eddins-Walcher Butane Co., 
298 S.W.2d at 96. For example, the statutory provision 
in question formerly provided, in relevant part, that if a party other than the 
subscribing employer made a settlement with the injured employee, then the 
subscribing employer had no liability to indemnify the third party “in the 
absence of a written agreement expressly assuming such liability, executed by 
the subscriber prior to such injury or death.” See former Tex. Rev. Civ. Stat. 
Ann. art. 8306 §3. The same relevant part of the current statute 
provides that the subscribing employer has no liability to indemnify the third 
party “unless the employer executed, before the injury or death occurred, a 
written agreement with the third party to assume the liability.” Tex. Lab. Code § 
417.004. If the words “with the third party” are omitted 
when reading the current language of section 417.004, then the section 
effectively provides the same as did the former statute: in order to be liable 
for indemnity to a settling third party, the subscribing employer must have 
executed a written agreement assuming the indemnity obligation before the 
injury, but the agreement was not required to have been with the third party 
seeking indemnity. Direct comparison of the two statutory provisions makes it 
clear that for the phrase “executed . . . with the third party” to have meaning, 
section 417.004 limits the subscribing employer’s indemnity obligation to 
parties who are signatories to the agreement executed by the subscriber.
            
In a similar vein, because the words “third-party beneficiaries” do not appear 
in the statute, we presume they were excluded for a purpose. Cameron, 
618 S.W.2d at 540. Only when it is necessary to give 
effect to clear legislative intent can we insert, by interpretation, additional 
words or requirements into a statutory provision. Id. And as the 
Court’s opinion demonstrates, even if we look for legislative intent beyond the 
statutory language itself, we find no clear legislative intent that the words 
“executed . . . a written agreement with the third party” were 
intended to encompass parties not signatories to an agreement.
            
Nor is it “perfectly plain” that giving the statutory language 
its literal, plain, and common meaning works an absurdity or manifest 
injustice. See Gilmore, 188 S.W. at 1039. First, the statute 
effectively provides that parties such as Mitchell who require indemnity 
agreements from subscribing employers may contract only for their own right to 
indemnity. That concept is not absurd. It does not offend established contract 
presumptions. See MCI Telecomms. Corp. v. Tex. Utils. 
Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999) (“[T]here is a presumption 
against, not in favor of, third-party beneficiary agreements.”); Corpus 
Christi Bank & Trust v. Smith, 525 S.W.2d 501, 503-04 (Tex. 1975) 
(noting the presumption that parties contract for themselves and not for 
third-party beneficiaries). And reading the statute according to its plain 
language, which limits a subscribing employer’s indemnity obligation, furthers 
the main inducement for employers to provide workers’ compensation insurance: 
limited exposure to common-law damage claims of an employee injured in the 
course of employment. See Tex. 
Lab. Code § 406.034; Tex. Workers’ Comp. 
Comm’n v. Garcia, 893 S.W.2d 504, 510-11 
(Tex. 1995); Massey v. Armco Steel Co., 
652 S.W.2d 932, 933 (Tex. 1983) (noting that the Workers’ 
Compensation Act bars an employee’s common law action for negligence against his 
employer). The benefit of a subscribing employer’s immunity from claims by an 
injured employee is diminished whenever the employer is made subject to 
indemnity claims for common-law damages recovered by the injured employee from 
third parties. Narrowing the exception to immunity to those parties with whom 
the employer executed a written agreement is wholly consistent with the 
overarching theory of workers’ compensation: immediate benefits to injured 
workers in exchange for employer immunity from claims. The former statute did 
not require the employer to have a pre-injury agreement “executed . . . with the 
third party” before the employer could be called on for indemnity. And the 1989 
amendments were not a mere recodification of prior law 
such as Texas 
statutes have been undergoing for some years. See Fleming Foods of Tex., 
Inc., v. Rylander, 6 S.W.3d 278, 283 (Tex. 1999) (“In 1963, the 
Legislature charged the Texas Legislative Council with the task of planning and 
executing a permanent statutory revision program to ‘clarify and simplify the 
statutes and to make the statutes more accessible, understandable, and usable.’ 
Tex. Gov’t Code § 323.007(a). The Legislature 
directed, however, that ‘the council may not alter the sense, meaning, or effect 
of [a] statute.’ Id. § 
323.007(b).”). The 1989 changes to the workers’ compensation statute were 
extensive and controversial. The driving force behind the 1989 changes was the 
system’s increasing cost to employers which had pushed the system to a crisis 
point. Garcia, 893 S.W.2d at 512. Business 
groups claimed that the increasing cost of compensation insurance forced large 
businesses to locate operations elsewhere and forced small businesses to cease 
operations or opt out of coverage. Id. The parties and amicus Texas 
Oil and Gas Association naturally focus their arguments on the statute’s effects 
on the oil and gas industry. But the crisis which generated the 1989 changes 
encompassed all Texas employers. See id. Indemnity 
agreements such as the Mitchell agreement attempt to, in effect, circumvent some 
of the financial inducement provided by the 1989 changes for employers to become 
and remain subscribers. One effect of enforcing such broad indemnity agreements 
is that the subscribing employer pays premiums for workers compensation 
insurance, yet remains liable for common-law damages to an employee by reason of 
having to indemnify numerous third parties for judgments or settlements in the 
employee’s common-law damages suit. This case was disposed of in the trial court 
by summary judgment. The record contains no evidence of how either 
interpretation of the statute contended for by the parties might affect the 
economics of the state’s workers’ compensation system and its cost to Texas employers. But 
Superior’s 
workers’ compensation policy was part of the summary judgment record. The 
employer’s liability part of the policy excludes coverage for contractually 
assumed liabilities, which would presumably include liabilities such as the 
indemnity agreement. Even assuming subscribing employers purchase separate 
liability insurance to cover contractually assumed indemnity agreements (as was 
required by Superior’s contract with Mitchell) so as to minimize their personal 
liability for indemnity, the indemnity agreements result in employers paying for 
both compensation insurance and liability insurance for injuries to its own 
employees. Intuitively, the broader the indemnity agreement and the greater the 
exposure to claims, the greater the cost of liability insurance will be to 
subscribing employers.
            
The plain language of section 417.004 respects the freedom of subscribing 
employers to contract away their statutory immunity from liability, yet protects 
them from economic pressures to enter broad indemnity agreements contracting 
away their immunity as to third parties with whom the employers do not have 
direct contractual agreements. The effect of interpreting section 417.004 to 
include persons or entities who are not signatories and direct parties to the 
agreements means that subscribing employers signing such indemnity agreements 
remain in the position they were in before the 1989 amendments: having no 
control over whom they may be called upon to indemnify because the owner or 
other actual contracting party with whom the employers executed the agreements 
remain able to contract with any third-party contractor they desire.
            
Energy asserts that reading the statute to apply only to direct parties to the 
agreement will be in derogation of the Texas Oilfield Anti-Indemnity Act 
(TOAIA)[2] and disruptive to the oil and gas 
industry. But a significant reason for passage of the TOAIA was to protect 
certain contractors who could not effectively protect themselves from being 
economically pressured into executing broad indemnity contracts in order to get 
oilfield work. See Tex. Civ. 
Prac. & Rem. Code § 127.002(a),(b); Getty Oil Co. v. Ins. Co. of 
N. Am., 845 S.W.2d 794, 802-03 (Tex. 1992). The primary thrust of the TOAIA 
is to generally make certain oilfield indemnification agreements void and 
unenforceable and to limit the enforceability of other such agreements, 
not to enhance enforceability of broad oilfield indemnity agreements. The 
TOAIA allows enforcement of certain specified types of indemnity agreements 
subject to its provisions by excluding those types of agreements from the 
operation of its general language. See Tex. Civ. Prac. & Rem. 
Code §§ 127.003-.005. 
The TOAIA does not, however, specifically address the anti-indemnity provision 
of the workers’ compensation statutes, much less 
provide that the TOAIA negates such provision. The closest the TOAIA comes to 
addressing the workers’ compensation anti-indemnity provision is section 
127.006, which provides that the TOAIA is not intended to affect the 
validity of an insurance contract or a benefit conferred by the workers’ 
compensation statutes.[3]
            
In my view, the Court’s construction of section 417.004: (1) does not comport 
with the literal, plain meaning of the statute; (2) dilutes subscribing 
employers’ immunity from common-law damages claims of the employers’ injured 
employees which is a key concept underlying the workers’ compensation statutes; 
and (3) does not square with one of the main reasons for the 1989 revision of 
the workers’ compensation statutes—reducing costs to subscribing employers. I 
would hold that language in Superior’s contract 
with Mitchell, which requires Superior to indemnify Energy, a nonsignatory to the contract, conflicts with section 417.004 
and that, to the extent of the conflict, the contractual language is invalid. I 
would affirm the judgment of the court of appeals.
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
 
OPINION DELIVERED: August 
24, 2007






[1] 
The Workers’ Compensation Act provides that employees of subscribing employers 
waive their common law claims against their employer unless the employees elect 
otherwise. See Tex. Lab. Code § 406.034(a).

[2] 
Tex. Civ. Prac. & 
Rem. Code §§ 
127.001-.007.

[3] 
This case does not require us to interpret the language of section 127.006. 
Superior 
responds to Energy’s argument by positing that statutory abrogation of certain 
common-law claims an employee might otherwise have against a subscribing 
employer is a benefit to the employer. Energy points to the definition of 
“benefit” in the Workers’ Compensation Act to argue that it is 
not.