**MARINE CREEK PARTNERS, LTD.,
and Founders Property Management
of Austin, Inc., Appellants,**

v.

**Steve CALDWELL and Judy Caldwell, Individually and as Next Friends of Richard Alex Caldwell, a Minor, Appellees.**

No. 2–94–190–CV.

Court of Appeals of Texas,
Fort Worth.

June 13, 1996.

Rehearing Overruled Sept. 5, 1996.

Law Offices of Larriet E. Thomas, Rick L. Wingler and Phillip L. Wray, II, Dallas, for Appellant.

Law Offices of John David Hart, and John David Hart, Fort Worth, for Appellees.

Before DAUPHINOT, RICHARDS and JOE L. DRAUGHN, (Assigned), JJ.

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This is a personal injury case. The issue is whether the parties to a swing set sales contract clearly intended to confer third-party beneficiary status on the users of the swing set. We hold that they did not. Accordingly, we reverse and render judgment that appellees take nothing on their contract claims.

Richard Caldwell, a thirteen-year-old boy, was swinging on the swing set at his apartment complex when the swing came loose from the frame because the chain separated from the "S" hook. Richard broke his ankle in the fall. His parents, Steve and Judy Caldwell, sued the property manager of the complex, Founders Property Management of Austin, Inc., and the owner, Marine Creek Partners, Ltd. for negligence and breach of contract. They based their contract action on a claim of third-party beneficiary status under the swing set sales agreement. Specifically, they claimed that the sales agreement between Marine Creek and the seller of the swing set made users like Richard third-party beneficiaries of the sales contract.

The Caldwells also sued the seller of the swing set, Shade Tree Toys, Inc. Shade Tree in turn cross-claimed against Marine Creek, alleging that Marine Creek had agreed to inspect and supervise the playground equipment, but failed to honor its agreement.

The trial resulted in a jury verdict for the Caldwells and Shade Tree. The jury found that Shade Tree and Marine Creek had agreed (1) that Marine Creek would visually inspect all the moving parts of the swing set every three months and replace them as signs of wear became apparent, and (2) that Marine Creek would provide adult supervision of the swing. The jury found that Marine Creek had breached these promises, which caused damages to Richard Caldwell. The trial court rendered judgment for the Caldwells on their negligence cause of action and for Shade Tree on its breach of contract cause of action. The trial court also rendered judgment for the Caldwells on their contract claims as third-party beneficiaries of the sales contract between Marine Creek and Shade Tree. In connection with this third-party beneficiary claim, the court also awarded attorney's fees to the Caldwells.

The negligence issues have been dismissed and are not before us in this appeal. Also, Marine Creek's appeal against Shade Tree, which came to us as a companion case, No. 2-94-191-CV, has been disposed of by dismissal. Marine Creek here appeals against the Caldwells on the third-party beneficiary recovery and the attorney's fees awarded in connection with it. Marine Creek argues in nine points of error that the contract recovery must fail because the swing set sales agreement will not support a third-party beneficiary claim.

Establishing a contractual third-party beneficiary claim is a difficult burden. This court has previously addressed this difficulty:

> There is a presumption against third-party beneficiary agreements. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 12 (Tex.App.—Dallas 1988, writ denied). The intent of the contracting parties is controlling when determining whether parties are third party beneficiaries of a contract. *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503 (Tex.1975); *see also Sowell v. Northwest Cent. Pipeline Corp.,* 703 F.Supp. 575, 581 (N.D.Tex.1988). In determining intent, courts presume that the parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out. *Corpus Christi Bank & Trust,* 525 S.W.2d at 503–04; *MJR Corp.,* 760 S.W.2d at 10. In other words, the party claiming third-party beneficiary status will succeed or fail according to the terms of the contract. *Greenville Indep. School Dist. v. B & J Excavating, Inc.,* 694 S.W.2d 410, 412 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

*Brunswick Corp. v. Bush,* 829 S.W.2d 352, 354 (Tex.App.—Fort Worth 1992, no writ).

■ Applying this analysis, we turn to "the terms of the contract." Those terms provide in relevant part:

> MAINTENANCE: Maintenance is the responsibility of the purchaser. **All moving parts should be periodically inspected by purchaser and replaced as signs of wear become apparent.** It is recommended that wooden components be treated with water sealant biannually, and nuts and bolts tightened on a regular basis. A visual inspection should be made by purchaser every 3 months.

> SUPERVISION: ALL PLAYGROUND AREAS AND EQUIPMENT REQUIRE ADULT SUPERVISION.

These are the only provisions upon which the Caldwells claim third-party beneficiary status.

■ Under Texas law, these provisions are insufficient. There is in law a strong presumption against such third-party beneficiary status: "The presumptions are against rather than in favor of third-party beneficiary agreements." *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 12 (Tex.App.—Dallas 1988, writ denied). Nothing in the quoted contractual language overcomes that presumption. The language is more in the nature of a warning. Sellers of chattels such as a swing set have a duty to warn about the risks of the product. RESTATEMENT (SECOND) OF TORTS §§ 388, 402A (1965). The quoted language would be directly relevant in a tort action where the issue was whether the seller passed on a warning about the product's risks. But the language contains nothing that imposes a *contractual* duty on the purchaser.

■ Texas courts are reluctant to recognize third-party beneficiary status, as is evident from the various cases that were discussed at length by the Dallas Court of Appeals in *MJR Corp. See MJR Corp.,* 760 S.W.2d at 12. An example illustrates the point. Third-party beneficiary status has been found where the contract stated that *"the Owner* **shall** *purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof." Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.,* 848 S.W.2d 724, 729 (Tex.App.—Dallas 1992, writ denied) (op. on reh'g) (bolded emphasis added). This language of promise—that the signer "shall" do something—is what is missing from the contract before us. Here the language says that the buyer "should" make inspections and that nut-and-bolt tightening is "recommended." There are important differences between should and shall and be-

tween a recommendation and a requirement.

It is true that the contract says that maintenance is the purchaser's "responsibility" and that playground areas and equipment "require" adult supervision. These provisions, however, are better understood as warnings than as planks of an enforceable promise. Modern tort law has led manufacturers to supply warnings in conjunction with many common products. Under the appellees' argument, those warnings could impose a previously unrecognized contractual duty on purchasers, a duty that runs to the seller of the products. Most consumers would be surprised to learn that by buying an ordinary commercial product, they have incurred contractual liability to the manufacturer for failing to follow safety warnings. Without clearer language than is present here, we are unwilling to turn socially beneficial warnings into binding promises by the buyers of products.

■ Neither is the contractual writing ambiguous. To the contrary, the writing is unambiguous in its failure to confer third-party beneficiary status on the Caldwells. Furthermore, even if the writing were ambiguous, the issue of the parties' intent cannot be regarded as tried by consent, as suggested by appellees, because Marine Creek objected to the submission of the jury questions. An objection to submission of a jury question prevents a trial by implied consent. *Harkey v. Texas Employers' Ins. Ass'n,* 146 Tex. 504, 208 S.W.2d 919, 922 (1948); *Morton v. Humber,* 399 S.W.2d 831, 832 (Tex.Civ. App.—Eastland 1966, no writ); 2 McDONALD, TEXAS CIVIL PRACTICE § 7:31 (1992). Had Marine Creek failed to object to the charge, there might well have been a trial by implied consent. *See, e.g., Sage Street Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445–46 (Tex.1993). But Marine Creek did object to the charge, and the fact that evidence of subjective intent came in without objection does not invalidate the charge objection or make the issue of the contract's meaning one for the jury.

■ To be sure, the testimony about Shade Tree's subjective intent was considerable. But in matters of contract construction, subjective intent is not the test. What counts is the objective intent of the parties, as expressed in the writing. *Boland v. Natural Gas Pipeline Co.,* 816 S.W.2d 843, 845 (Tex.App.—Fort Worth 1991, no writ). Nowhere does the writing before us express any intent to confer third-party beneficiary status on anyone, nor does it impose an enforceable contractual duty on Marine Creek to provide inspections or supervision. For the reasons given above, we hold that recovery in contract is legally untenable. Points of error two, three, six, and seven are sustained.

It follows that the award of attorney's fees must be reversed because such an award presumes an underlying recovery on the third-party beneficiary contract theory. Point of error one is sustained.

Our holding——that there can be no recovery under a third-party beneficiary theory——should not be misconstrued as being callous to the Caldwells' injuries or exonerating Marine Creek for any negligence. As stated, the negligence recovery is not before us in this appeal. What is before us is a narrow question of legal doctrine. The answer we give to that question today must fit with past decisions, and it must rest on a rule that the law and the public can live with in future cases. *See Edmond v. United States Postal Serv. Gen. Counsel,* 953 F.2d 1398, 1401 (D.C.Cir.1992) (Silberman, J., concurring) ("Litigation is a zero-sum game, and bending the rules to help one party inevitably hurts another."). The judgment of the trial court is reversed, and judgment is rendered that the Caldwells take nothing on their claims for breach of contract and their claims for attorney's fees.