NUMBER 13-00-064-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

JOSE A. ORTEGA AND
RENE

ORTEGA AS INDIVIDUALS
AND

D/B/A ORTEGA FARMS, A PARTNERSHIP,                             Appellants,

 

                                                   v.

 

CITY
NATIONAL BANK,                                                          Appellee.

 



 

                        On appeal from the 206th District Court

                                  of Hidalgo
County, Texas.

 



 

               OPINION ON MOTION FOR REHEARING

 

                    Before Justices Hinojosa, Castillo,
and Amidei[1]

                                  Opinion by Justice Castillo

 








We grant appellee=s motion for
rehearing, withdraw our opinion issued August 31, 2001, and substitute the
following in its place.

Jose and Rene Ortega (Athe Ortegas@)[2]
sought financing for their farming operations from City National Bank (Athe Bank@).  When the bank refused to extend a line of
credit over and above that already extended, the Ortegas sued.  The summary judgment from which this appeal
arises granted a take-nothing judgment against appellants and judgment in favor
of the Bank on its counterclaim for judicial foreclosure of its security
interest on each of three notes.  The
summary judgment awarded the Bank liquidated damages in the amount of
$302,637.78.  Appellants assert the trial
court erred in granting summary judgment against their claims of breach of contract,
negligence, and fraud.  We affirm.

FACTUAL BACKGROUND

In May of 1995, the
Bank loaned the Ortegas $93,800 for the 1996 crop year.  A guarantee of the loan was provided by the
Farm Service Agency (the AFSA@).[3]  The Ortegas made no payment on the loan.  Despite the non-payment of the 1995 loan, in
January of 1996, the Bank made another loan to the Ortegas for
$115,000.00.  This loan was also
guaranteed by the FSA and provided that Athis promissory note
will be used for three consecutive crop years, with [the] second and third
years being








 advanced only aftger [sic] preceding
crop year[>]s advance has been
paid in full.@  That same month, the Bank restructured the
1995 loan as a five-year amortization with a three-year balloon.  The Ortegas failed to repay the entire
amounts due for the 1995 and 1996 loans, although they did receive some crop
insurance proceeds which were turned over to the Bank.  In August of 1996, a vice president of the
Bank applied part of a $49,000 insurance check to the 1995 debt and part to the
1996 line-of-credit debt.[4]  Another insurance check was applied to the
1996 line- of-credit debt.  Needing money
to secure a lease agreement on 300 acres of land used for their farming
operations, the Ortegas  requested
financing from the Bank for the 1997 crop year. 
In September of 1996, the Bank notified the Ortegas by letter that, at
that time, it was denying a request for a non-FSA guaranteed direct line of
credit from the bank, due to drought conditions in the Rio Grande Valley and
the uncertainty of the availability of sufficient water.  In December of 1996, FSA informed the Ortegas
that the 1997 advance on the FSA-guaranteed line of credit could not be
extended because the Ortegas did not meet the necessary debt-credit ratio
required to secure an FSA guarantee.  The
Bank then reversed the application of the August insurance proceeds to the 1995
loan, applied those funds to the 1996 line of credit, and pushed back the due
date on the 1995 loan.  These actions
altered the Ortegas= debt-credit ratios
sufficiently to allow them to qualify for a FSA guarantee of a 1997 line of
credit.








In May of 1997, the
Ortegas sued the Bank, claiming that the Bank=s initial application of a portion of the
insurance funds toward the 1995 debt, rather than the 1996 line of credit,
directly caused the FSA=s rejection of the
loan renewal package in late 1996 and Ortega=s subsequent loss of the ability to lease the 300
acres that they had been unable to secure. 
The Ortegas alleged breach of contract, breach of the duty of good
faith, negligence, and fraud under the Deceptive Trade Practices Act.[5]  The Bank filed a counterclaim for judicial
foreclosure on all outstanding notes which the Ortegas owed the Bank. 

PROCEDURAL BACKGROUND








On March 26, 1999, the
Bank filed a traditional motion for summary judgment against claims alleged in
the Ortegas= first amended
petition.  The Ortegas subsequently
amended their petition, filing APlaintiff=s Third Amended
Petition for Breach of Express Contract and Fraud@ which replaced its breach of contract claim with
a third-party beneficiary action for breach of contract and dropped the DTPA
claims, replacing them with common-law fraud claims.[6]  The Bank then filed a AMotion for Summary
Judgment Reply@ on May 3, 1999,
noting that new causes of action had been filed but suggesting that the trial
court grant a partial summary judgment on the issues previously raised in the
Ortegas= prior petition.  The Ortegas filed a response alleging that
the existing motion for summary judgment was inapplicable to the pleadings
before the court because of the amended petition and therefore should be denied
in whole.  In response, on July 29, 1999,
the Bank filed a supplemental motion for summary judgment, seeking a summary
judgment on traditional grounds against all the claims alleged in the Ortegas= third amended
original petition, in which the Ortegas pled for recovery as a third-party
beneficiary of the contract between the Bank and the Farm Service Agency,
negligence, breach of the duty of good faith and fair dealing, and fraud.  The Bank also alleged a Ano-evidence@ground in the
alternative as to the Ortegas= fraud claim.

On August 6, 1999, prior to the submission date
for the supplemental motion for summary judgment, the Ortegas once again
amended their petition and added an additional cause of action for civil
conspiracy.  In their August 16, 1999
response to the Bank=s pending motion, the
Ortegas provided notice that they had filed an amended petition and specially
excepted to the supplemental motion for summary judgment on the grounds that Atherefore the
Defendant=s motion is
inapplicable with regard to those theories which are insufficiently described by
the defendant.@  In the subsequent paragraph of the response,
the Ortegas provided notice of the newly alleged civil conspiracy cause of
action.  The Bank filed a reply to the
Ortegas= response but did not
address the issue of the new cause of action or file any additional
supplemental motions for summary judgment.

THE
TRIAL COURT=S FINDINGS








In the summary judgment order, the trial court
acknowledged the filing of the fourth amended original petition, finding that
it Aincluded essentially
the same allegations as in their third amended petition.@  The trial court further found that the Bank=s supplemental summary
judgment motion Aaddressed all of the
Ortegas= affirmative claims
for relief appearing in their fourth amended petition.@  The trial court granted summary judgment
against all of the plaintiffs= claims raised in the
fourth amended petition.

JURISDICTION

Before we reach the
merits of this case, we must first determine whether we have jurisdiction over
this appeal.  Texas Ass=n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). 
Because the question of jurisdiction is a legal question, we follow the de
novo standard of review.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).  Jurisdiction of a court is never presumed
and, if the record does not affirmatively demonstrate the appellate court=s jurisdiction, the
appeal must be dismissed.  El-Kareh v.
Tex. Alcoholic Beverage Comm=n, 874 S.W.2d 192, 194
(Tex. App.BHouston [14th Dist.]
1994, no writ).  As appeals are only
allowed from final orders or judgments, we must first consider whether an order
purporting to grant a summary judgment can be final and appealable when one of
the plaintiff=s causes of actions
was not addressed by the defendant in the motion for summary judgment.  Lehmann v. Har-Con Corp., 39 S.W.3d
191, 195 (Tex. 2001); Liu v. Yang, 69 S.W.3d 225, 227 (Tex. App.BCorpus Christi 2001,
no pet.).   We have recently decided this
question in the negative.  Liu, 69
S.W.3d at 228-29.








However, the judgment
in the present case, unlike that in Liu, did purport to address all of
plaintiffs= claims, even those
not specifically pled in the motion for summary judgment, and, in accordance
with the same, ordered that the plaintiffs= take nothing on their
suit.  As the trial court purported to
rule on all claims in the plaintiff=s fourth amended
petition, we find that the summary judgment order was final.  Ritzell v. Espeche, 87 S.W.3d 536, 538
(Tex. 2002); see also Lehmann, 39 S.W.3d at 200.  We therefore have jurisdiction to determine
this cause.

The trial court
granted summary judgment against all five of the Ortegas= claims in their fourth
amended petition: breach of contract, breach of duty of good faith and fair
dealing, negligence, fraud, and civil conspiracy.  On appeal, the Ortegas complain only of the
trial court=s rulings on their
breach of contract, negligence, and fraud claims.  Accordingly, we will now consider whether the
trial court erred in granting summary judgment against the appellants on their
breach of contract, negligence, and fraud claims.

STANDARD OF REVIEW








 The function of summary judgment is not to
deprive litigants of the right to a trial by jury, but to eliminate patently
unmeritorious claims and defenses.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972).  On appeal, the proper
standard of review for the grant of a motion for summary judgment is determined
by whether the motion was granted on traditional or Ano-evidence@ grounds.  The determination of the nature of the motion
for summary judgment is critical, as the difference in relative burdens between
the parties in the two types of summary judgments is significant. See
Michael v. Dyke, 41 S.W.3d 746, 750-52 (Tex. App.BCorpus Christi 2001,
no pet.)

We review the grant of
a traditional summary judgment de novo. 
Alejandro v. Bell, 84 S.W.3d 383, 390 (Tex. App.BCorpus Christi 2002,
no pet.).  In a traditional motion for
summary judgment, the movant has the burden of showing both that there is no
genuine issue of material fact and entitlement to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Swilley, 488 S.W.2d at 67.  In deciding whether there is a genuine issue
of material fact, evidence favorable to the nonmovant will be taken as true,
and all reasonable inferences made, and all doubts resolved, in favor of the  nonmovant.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d
420, 425 (Tex. 1997).  Summary judgment
is proper if the movant disproves at least one element of each of the plaintiff=s claims or
affirmatively establishes each element of an affirmative defense to each
claim.  Id.  The nonmovant has no burden to respond to a
traditional summary judgment motion unless the movant conclusively establishes
its cause of action or defense.  Swilley,
488 S.W.2d at 68. 








A no-evidence summary
judgment is equivalent to a pretrial directed verdict, and this Court applies
the same legal sufficiency standard on review. 
Zapata v. Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.BCorpus Christi 1999,
pet. denied).  In an appeal of a
no-evidence summary judgment, this Court reviews the evidence in the light most
favorable to the nonmovant, disregarding all contrary evidence and
inferences.  Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Burroughs Wellcome Co. v.
Crye, 907 S.W.2d 497, 499 (Tex. 1995).  If the nonmovant produces evidence to raise a
genuine issue of material fact, summary judgment is improper.  Tex.
R. Civ. P. 166a(i).  All that is
required of the non-movant is to produce a scintilla of probative evidence to raise
a genuine issue of material fact.  Zapata,
997 S.W.2d at 747.  ALess than a scintilla
of evidence exists when the evidence is >so weak as to do no
more than create a mere surmise or suspicion of a fact.=@  Id. (citing Moore v. KMart Corp.,
981 S.W.2d 266, 269 (Tex. App.BSan Antonio 1998, pet.
denied)(quoting Kindred v. Con/Chem Inc., 650 S.W.2d 61, 63 (Tex.
1983)). Conversely, more than a scintilla exists when the evidence Arises to a level that
would enable reasonable and fair-minded people to differ in their conclusions.@  Transp. Ins. Co. v. Moriel, 879 S.W.2d 10,
25 (Tex. 1994).  The burden of producing
evidence is entirely on the non-movant; the movant has no burden to attach any
evidence to the motion.  Tex. R. Civ. P. 166a(i). 








In the present case,
the trial court did not specify the grounds on which the summary judgment was
granted.  If a summary judgment order
issued by the trial court does not specify the ground or grounds relied upon for
a ruling, the ruling will be upheld if any of the grounds in the summary
judgment motion can be sustained.  Bradley
v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999); Weakly v. East,
900 S.W.2d 755, 758 (Tex. App.BCorpus Christi 1995, writ
denied).  As the trial court granted
summary judgment as to each of appellants= claims, we will thus
consider the grounds alleged in the summary judgment motion as to each claim
complained of on appeal and affirm if any are sufficient to sustain the trial
court=s ruling as to that
claim.  Since Atraditional@ grounds were asserted
as to each claim, and Ano-evidence@ grounds were asserted
only as an alternative ground as to a single claim, we will first review the
grant of the summary judgment under traditional summary judgment standards and
only consider the Ano-evidence@ ground if the issues
are not disposed of by the former review.

BREACH OF CONTRACT
CLAIM

In their first issue,
appellants argue that they were third-party creditor beneficiaries of the AAgreement for
Participation in Farmer Programs Guarantee Loan Programs of the United States
Government@ between the FSA and
the Bank.  In support of this claim,
appellants refer this Court to certain language of the agreement and to section
1941.2 of Title 7 of the Code of Federal Regulations which describes the objectives
of the loan program.  7 C.F.R. '1941.2 (2002).  Appellants cite no case law supporting their
claim that the AAgreement for
Participation@ establishes a legal
duty owed to them by the Bank or FSA that makes them creditor beneficiaries of
the agreement.[7]








The Bank argues that
the Ortegas were not intended third-party beneficiaries of the agreement.  They cite to several reviewing courts outside
of Texas for the proposition that borrowers, as a matter of law, are not
third-party beneficiaries of  federal
loan guarantee agreements between federal agencies and lending institutions.

There is a strong
presumption in Texas law against third-party beneficiary agreements, and we
must look to the terms of the contract to determine whether the contracting
parties expressly demonstrated an intent to depart from that presumption. Marine
Creek Partners, Ltd. v. Caldwell, 926 S.W.2d 793, 795 (Tex. App.BFort Worth 1996, no
writ).  A third-party beneficiary
contract will not be created by implication. 
MJR Corp. v. B & B Vending Corp., 760 S.W.2d 4, 12 (Tex. App.BDallas 1988, writ
denied).  We must begin with the
presumption that the parties to a contract contracted for themselves unless it Aclearly appears@ that they intended
the third party to benefit from the contract. 
Corpus Christi Bank & Trust v. Smith, 525 S.W.2d 501, 503-04
(Tex. 1975).  The intent of the
contracting parties is controlling. Id. at 503.  If there is any reasonable doubt as to the
contracting parties= intent to confer a
direct benefit on the third party by way of the contract, the third-party
beneficiary claim must fail.  MJR
Corp., 760 S.W.2d at 11.








A third party faces a Adifficult burden@ in establishing a
contractual third-party beneficiary claim. 
Marine Creek, 926 S.W.2d at 795. 
A third party may enforce or 
recover under a contract only if: (1) the contracting parties intended
to secure some benefit to that third party; and (2) the contracting parties
entered into the contract directly for the third party=s benefit.  Stine v. Stewart, 80 S.W.3d 586, 589
(Tex. 2002)(per curiam); MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 651 (Tex. 1999).  The
intent of the contracting parties to confer a direct benefit to the third party
must be Aclearly and fully@ expressed in the
agreement itself, or enforcement by the third party will be denied.  Stine, 80 S.W.3d at 589; MCI,
995 S.W.2d at 651.

To qualify as an
intended third-party beneficiary, the third party must show that it is either a
Adonee@ or Acreditor@ beneficiary.  Stine, 80 S.W.3d at 589; MCI,
995 S.W.2d at 651.  The fact that a third
party may receive an incidental benefit from a contract is not sufficient to
provide him a right of action to enforce or recover under the contract.  Stine, 80 S.W.3d at 589; MCI,
995 S.W.2d at 651.  Furthermore, the
contracting parties must intend to secure a benefit for the specific third
party bringing the action; it is not enough that the contract is designed to
benefit a broad class of people, of whom the third-party might be a
member.  Stine, 80 S.W.3d at 589 (AA third party may
recover on a contract made between other parties only if the parties intended
to secure a benefit to that third party. . . .@)(emphasis added); MCI,
995 S.W.2d at 651 (same); Gonzalez v. City of Mission, 620 S.W.2d 918,
922 (Tex. Civ. App.BCorpus Christi 1981,
no writ)(rejecting argument that contract between the Department of Housing and
Urban Development and the City of Mission 
intended to make plaintiff family a third-party beneficiary, noting that
the contract Aclearly shows it was
designed to assist a broad class of people, not just one individual family.@).













The Ortegas assert
that they are creditor beneficiaries of the agreement.  A person is a creditor beneficiary if the
performance promised under the contract is in satisfaction of a legal duty,
such as an indebtedness, contractual obligation, or other legally enforceable
commitment, owed to the person by the promisee.  Stine, 80 S.W.3d at 589; MCI, 995
S.W.2d at 651.  In other words, a
creditor beneficiary is Aa third person to whom
the bargain-seeking party (the >promisee= or contract party
exacting the particular stipulation) has an indebtedness, contractual
obligation, or other legally enforceable commitment to the third party which
commitment the bargain-seeker wishes to discharge or protect by stipulating
that the bargain-giver (the opposing contract party or >promisor= concerning the
particular stipulation) shall deliver a contract performance to the third
party.@  MJR, 760 S.W.2d at 11.  Thus, a court first must identify the
bargain-seeker in the agreement; next, examine whether there is any
indebtedness, contractual obligation, or other legally enforceable commitment
between the bargain-seeker and the third party; and last determine whether the
bargain-seeker clearly intended to discharge or protect that indebtedness,
contractual obligation, or other legally enforceable commitment by stipulating
in the agreement that the bargain-giver would 
contractually undertake to satisfy the same. Id.   As noted, this intent must be Aclearly and fully@ expressed in the
agreement itself.  Stine, 80
S.W.3d at 589; MCI, 995 S.W.2d at 651. 
Furthermore, the promisee must intend that the beneficiary have the
right to enforce the agreement.  MJR,
760 S.W.2d at 16.  Both the intent to
confer a benefit on the third party by way of the agreement and the intent that
the third party have the right to enforce the agreement must be present, or the
third party remains an incidental beneficiary. 
Id. 








In support of their
argument that they are Acreditor@ beneficiaries of the AAgreement for
Participation in Farmer Programs Guarantee Loan Programs of the United States
Government@ between the FSA and
the Bank, the Ortegas refer to certain language in the agreement and also to
statutory language describing the objectives of the loan program.[8]  In
determining whether the Bank and FSA intended to secure a benefit to the
Ortegas by way of the AAgreement to
Participate@ and entered into the AAgreement to
Participate@ directly for the
Ortegas= benefit, we must
examine the text of the agreement itself for a Aclear indication@ of this intent. 
MCI, 995 S.W.2d at 652.  A
court will not imply a third-party contract from documents extraneous to the
agreement.  MJR, 760 S.W.2d at
12-13.  AIt is well settled that one claiming to be a
third-party beneficiary succeeds or fails according to the provisions of the
contract sued upon.@  Bass v. City of Dallas, 34 S.W.3d 1, 8
(Tex. App.BAmarillo 2000, no
pet.)(quoting Greenville Indep. Sch. Dist. v. B & J Excavating, Inc., 694
S.W.2d 410, 412 (Tex. App.BDallas 1985, writ ref=d n.r.e.)).  Thus, we will examine only the language of
the agreement itself.[9]

Appellants rely on the
following language of the agreement :

B. General
Requirements for the Lender . . . .  

 

2. Knowledge of
Program Requirements: The Lender is required to 

obtain and keep itself
informed of all program regulations and guidelines . . . .

 

4. Employee
Qualifications. The Lender shall maintain a staff that is

well-trained and
experienced in origination and loan servicing 
functions . . . . 

 

C. Underwriting
Requirements

 

1. Responsibility.
The Lender is responsible for originating, servicing,

and collecting all
guaranteed Farmers Programs in accordance with Agency regulations. . . .

 

D. Servicing
Requirements . . . .

 

2. Negligent
Servicing.  The guarantee cannot be
enforced by the      Lender to the extent
a loss results from a violation of usury laws or negligent servicing regardless
of when [FSA] discovers such violation or negligence.  Negligent servicing is defined as the failure
to perform services which a reasonably prudent lender would perform in
servicing its own portfolio of loans that are not guaranteed. . . .

 

5. Delinquent
Accounts. . . . 

          c.
The Lender will negotiate in good faith to resolve any problem in order to
allow the borrower to cure a default, where reasonable.













In determining whether
the contracting parties intended to make the Ortegas third-party beneficiaries
of the AAgreement to Participate,@ we must consider the
entire scope of the agreement and give effect to all its provisions.  Stine, 80 S.W.3d at 590; MCI,
995 S.W.2d at 652.  In examining the
agreement at issue, we do not find any language that acknowledges any legal
obligation owed by either the Bank or FSA to the Ortegas.  Nor do we find that either the Bank or FSA
requires the other to undertake any action to discharge or protect any legal
obligation owed to the Ortegas.  Likewise
there is no language that indicates that the Ortegas may sue to enforce the
agreement to secure the performance of an action intended to discharge or
protect a legal obligation owed to them. 
The language cited to us by appellants does not demonstrate that either
FSA or the Bank has an indebtedness, contractual obligation, or other legally
enforceable commitment to the Ortegas, nor does it evince a Aclear intent@ to provide a direct
benefit to the Ortegas in satisfaction of any indebtedness, contractual
obligation, or other legally enforceable commitment to the Ortegas.  The clear intent of the agreement is to set
out the obligations of the Bank and the FSA vis-a-vis the Bank=s participation in the
Farmer Programs Guaranteed Loan Programs to protect both parties and minimize
the need for the federal government to actually pay out the guarantee.  The only parties provided remedies for
violations or disputes under the agreement are the Bank and FSA.  There is no language even suggesting or implying
that any third party has any remedy for a violation of the agreement or that
the agreement is being made for the benefit of another party, much less
expressing a clear intent to provide a direct benefit to a particular party,
although incidental benefits might inure to borrowers under the loan program.  

Appellants suggest
that the objectives of the loan program as set out in section 1941.2[10] establish a legal duty owed to them by FSA
and so the AAgreement for
Participation in Farmer Programs Guaranteed Loan Programs@ was entered into for
their benefit and made them third-party creditor beneficiaries with the right
to enforce the agreement.  We do not read
a statement of objectives and purposes for the federal farm loan guarantee
program to create a legal, enforceable duty on the part of FSA toward the
Ortegas, and appellants provide no authority supporting such a claim.[11]  More
importantly, as noted, under Texas law, before a third party may enforce or
recover under an agreement, the agreement itself must demonstrate a clear
intent to convey a direct benefit to that third party in satisfaction of an
existing legal obligation.  Stine,
80 S.W.3d at 589; MCI, 995 S.W.2d at 651.  The agreement at issue in this case does not
do so.  Accordingly, we find that
appellants are not third-party beneficiaries of the agreement at issue.  We hold that the trial court did not err in
granting summary judgment on their breach of contract claim and overrule
appellants= first issue.








NEGLIGENCE

In their second issue,
the Ortegas assert that the Bank owed a duty to them, imposed by law and
independent of the contract, that was breached by the Bank, and thus the trial
court improperly granted summary judgment against them on their negligence
claim.  Specifically, they cite former
section 1980.130 of Title 7 of the Code of Federal Regulations as imposing a
duty of the Bank to A[assure] that proceeds
from the sale or other disposition of collateral are accounted for and applied
in accordance with the lien priorities on which the guarantee is based.@ 7 C.F.R. '1980.130, removed 61
FR 35916, 35,934, July 9, 1996, see now 7 C.F.R ' 762.142 (2002).  Appellants argue that the Bank was negligent
in discharging this duty by initially applying the insurance funds received to
the outstanding debt instead of the operating line of credit.  Appellants also refer to Anumerous CFR
provisions@ in the contract upon
which they rely, but they do not specify any other particular duty that they
alleged was owed to them and breached by the Bank.

The Bank responds that
the Ortegas, in their fourth amended petition under their claim for negligence,
did not allege a duty under law but pled rather that the duty owed to them was @created by the
contract as referred to in paragraph II.@  The Bank argues that the Ortegas thus did not
plead any duty independent of the contract, and therefore, since the only
alleged duty was one created by contract and the damages sought arose only from
the alleged breach of contract, appellants= claim sounds only in
contract and the trial court correctly granted summary judgment against the
negligence claims.








We first note that the
Bank is correct in its recitation of appellants= pleadings regarding negligence.  Appellants= petition only claims the breach of a duty
alleged to have been created by Athe contract.@

Where the only duty
between parties arises from a contract, a breach of this duty will ordinarily
sound only in contract, not in tort.  Southwestern
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).  As a prerequisite to asserting a claim of
negligence, there must be a violation of a duty imposed by law independent of
any contract.  Id.; Southstar Corp. v.
St. Paul Surplus Line Ins. Co., 42 S.W.3d 187, 193 (Tex. App.BCorpus Christi 2001,
no pet.).  

Appellants= petition[12] makes no claim of the breach of any duty
independent of a contract and, in fact, specifically asserts the violation of a
duty Acreated by the
contract.@  This fails to raise a negligence claim as a
matter of law.  DeLanney, 809
S.W.2d at 494; Southstar Corp., 42 S.W.3d at 194.  Moreover, the only damages claimed are
economic damages arising from the alleged breach of contract.[13] Accordingly, any claim as to these damages
would sound only in contract.  DeLanney,
809 S.W.2d at 494-95.  We hold
that the trial court correctly granted summary judgment against appellants= negligence claims and
overrule appellants= second issue. 

FRAUD








In their final issue,
appellants aver that there was evidence of misrepresentation and so the trial
court should not have granted summary judgment on their claim of fraud.  In their response to the Bank=s supplemental motion
for summary judgment, appellants attached excerpts from the deposition of
Bacilio Garcia and Marcos Garza[14] and a
letter from Mr. Garcia which they claim demonstrate that the Bank did not
sufficiently disclose its reasons for its actions in denying the non-FSA
guaranteed direct line of credit for which they applied in September 1996. 

The letter in which
the fraudulent statement was allegedly made was a notice from Garcia to
appellants that the Bank would not extend credit.  In it, Garcia stated:

Unfortunately, the
bank=s loan committee has
determined that it is way too early for the bank to commit itself.  As you know, the drought condition in the
Valley has not changed and thus the availability of water is not known.  The committee feels it is not prudent to
start advancing money so early without having a clear picture of what lies
ahead.

 

In the deposition
excerpt, Garcia stated that the bank committee was being cautious in extending
credit to any farm request because of the drought conditions then existent in
the Rio Grande Valley, but did not make any investigation to determine how much
water was available for the particular district in which the Ortegas= land lay.








Appellants argue that
the Bank=s Aincomplete disclosure@ in the letter of
September 16, 1996 of its reason for denying credit, as well as Athe lack [of]
investigation of the actual water allotments@ were Amaterial
misrepresentations . . . . made >recklessly and without
knowledge of the truth,=@ thus forming the
basis for a fraud claim.  They argue that
the Bank Amisrepresented the
reason why the loan was denied and used an entirely misrepresented reason for
the denial.@  They further argue that Athis fraud prevented
[them] from seeking other forms of financing,@ though they cite to no evidence of such reliance
to their detriment.

The Bank replies that
appellants misconstrue the representation that was made.  The Bank points out that it never represented
to the Ortegas that it had checked water availability.  The Bank argues that the only representation
made was that there was general concern of a water shortage because of the
drought, that the statement was true, and so no material misrepresentation was
made. The Bank notes that appellants failed to provide any contrary summary
judgment evidence demonstrating that the reason given was not true.  The Bank also argues that the evidence filed
by appellants in response to their motion for a no-evidence summary judgment on
this issue B the guarantee
agreement, deposition excerpts from Garcia and Garza, and the letter from
Garcia with the disputed statement B provides no evidence
of a material misrepresentation, that the Ortegas relied on such alleged
material misrepresentation, or that it caused them any injury, and therefore
summary judgment was proper.








The elements of fraud
in Texas are: (1) a material misrepresentation; (2) which was false; (3) which
was known to be false or was asserted without knowledge of the truth; (4) which
was intended to be acted upon; (5) which was relied upon; and (6) which caused
injury.  Johnson & Johnson Med. v.
Sanchez, 924 S.W.2d 925, 929-30 (Tex. 1996).  The Bank filed evidence, through the
deposition of Bacilio Garcia, that the Bank declined the request because of
concerns about the drought and water condition at the time.  Appellants did not provide any controverting
evidence in their response which demonstrated that the Bank=s stated reasons were
a misrepresentation of the true reasons for its denial of the Ortegas= request for
credit.  We find that there was no
misrepresentation and that the Bank met its burden to disprove the element of a
material misrepresentation.  We also find
that appellant did not provide any evidence, in response to the no-evidence
summary judgment grounds, that demonstrated a material misrepresentation,
actual reliance on, or injury caused by, the alleged false material
misrepresentation.  We hold that the
trial court properly granted summary judgment against appellants= fraud claim under
either the traditional or no-evidence summary judgment grounds.  We overrule appellant=s third issue.

CONCLUSION

Having overruled all
of appellants= issues, we affirm the
judgment of the trial court.

 

ERRLINDA CASTILLO

Justice

 

Opinion
delivered and filed

this 23rd day of
January, 2003.

 











[1]
Former Justice Maurice Amidei assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to Tex.
Gov=t Code Ann. '
74.003 (Vernon 1998). 

 





[2]
Below, the Ortegas sued individually and d/b/a Ortega Farms, a Partnership.

 





[3] Known
at the time of the contract as the Farmer=s
Home Administration, or FmHA, the Farm Service Agency is a federal governmental
agency which administers numerous federal farm programs for the United States
Department of Agriculture.





[4] There is
a dispute as to whether the Ortegas agreed to this particular distribution.





[5] Tex. Bus. & Com. Code Ann. '17.46(b)(Vernon
2002).  

 





[6] There
is no mention of a second amended petition having been filed by the Ortegas in
either parties= briefs, and
such a petition does not appear in the record before us.

 





[7] The
sole case cited by appellants in support of this issue does not deal with FSA
participation agreements.  It also was
not designated for publication and so has no precedential value. Tex. R. App. P. 47.7. 





[8]  Specifically,
appellants cite to section 1941.2 of the Code of Federal Regulations which
reads: 

 

The
basic objective of the OL loans program is to provide credit and management
assistance to farmers and ranchers to become operators of family-sized farms or
continue such operations when credit is not available elsewhere.  FmHA or its successor agency under Public Law
103-354 assistance enables family-farm operators to use their land, labor, and
other resources and to improve their living and financial conditions so they
can obtain credit elsewhere. The objective of the OL loan program for rural
youth is to provide credit for rural youths to establish and operate
income-producing projects of modest size in connection with their participation
in 4-H clubs, Future Farmers of America, and similar organizations.

 

7
C.F.R. '1941.2
(2002).  

 





[9]   We note,
however, that the language setting out the objectives of the program does not
in any way evince an intent to provide a specific benefit directly to the
Ortegas by way of the particular agreement at issue in this case. 





[10]  See footnote 8.

 





[11] We
have found no case law in Texas deciding whether agreements to participate in
the federal farmer loan guarantee program between FSA and lending institutions
create a third-party beneficiary contract to the benefit of borrowers under the
loan guarantee program, nor have the parties provided us any such case law.  Other jurisdictions have held that agreements
between the FSA and a lender, such as the one at issue in the present case,
which outline the lender=s duties and
responsibilities for all contracts and guarantees issued to the institution
rather than duties as to a particular borrower, do not support a third-party
beneficiary claim.  See Parker v.
USDA, 879 F.2d 1362, 1366 (6th Cir. 1989); Schuerman v. United States,
30 Fed. Cl. 420, 434 n.14 (1994).   

 





[12] Appellants
did argue that the Bank had violated a duty imposed by federal regulations in
their response to the motion for summary judgment, but they did not amend their
petition to assert a claim of the violation of any duty apart from one Acreated
by the contract.@ 

 





[13]
In their petition, appellants plead that a
breach of contract occurred by conduct that might have been either negligent or
intentional conduct and do not assert a tort arising from conduct apart from
the alleged breach of contract or claim any damages apart from those arising
from the alleged breach. 

 





[14]
The deposition excerpt of Marcos Garza, an FSA official, dealt with the
objectives of the loan guarantee program. 
Nothing in that exhibit appears to go to the issue of the alleged fraud
on the part of the Bank.